United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 01, 2026

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-35208** |
| **HARRY LANDRY, JR.,** | § | |
| | § | **CHAPTER 13** |
| Debtor. | § | |
| | § | |
| **HARRY LANDRY, JR.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 25-3645** |
| | § | |
| **SHEMEIKA SCROGGINS,** *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | | |

## <u>MEMORANDUM OPINION</u>

Harry Landry, Jr. seeks damages against Shemeika Scroggins, Hillary Harmon, in her capacity as Receiver,[1] and Daryl L. Smith, Sr., Fort Bend County Precinct 2 Constable, for violations of the automatic stay.[2]  Mr. Landry's claim against Ms. Scroggins was dismissed by the Court[3] and his claim against Constable Smith has been settled.[4]  For the reasons explained below, the Court awards Mr. Landry $4,660 in

---

[1] There is no evidence that Ms. Harmon acted outside of her capacity as a Receiver in this case.  She is a defendant solely in her Receivership capacity.  As set forth in detail below, any award against the Receiver must be paid from Receivership assets.

[2] Case No. 25-35208, ECF No. 16.  The Court notes the parties *repeatedly and incorrectly* filed documents in this adversary proceeding in Case No. 25-35208 and the docket in the main case and adversary case have transmuted into one.

[3] Case No. 25-35208, ECF No. 113.

[4] Case No. 25-35208, ECF No. 137.

damages against Ms. Harmon, solely in her capacity as Receiver.  A separate judgment will issue.

## BACKGROUND[5]

In September 2000, Harry Landry, Jr. and Shemeika Scroggins were married in the State of Texas.[6]  In August 2001, Mr. Landry and Ms. Scroggins purchased real property located at 3134 Prosperity South Drive (formerly Confederate South Drive), Missouri City, Texas 77459 (hereinafter the "Property").

In March 2020, the 505th District Court of Fort Bend County, Texas signed an agreed final divorce decree, dissolving the marriage between Mr. Landry and Ms. Scroggins.  *Landry v. Scroggins*, No. 14-23-00728-CV, 2025 WL 1561532, at *1 (Tex. App.—Houston June 3, 2025).  The Property was deemed community property under Texas law, and each party was awarded a 50% separate property interest.  *Id.*  The divorce decree did not provide for the partition or sale of the Property.  *Id.*

In May 2020, Ms. Scroggins sued Mr. Landry in the 505th District Court, seeking partition of the Property by sale.  *Id.*  She also sought to recover attorney's fees, expenses, and interest.  *Id.*  This suit was consolidated with the divorce action discussed above.  *Id.*  In June 2021, the state court ordered (1) the Property be listed for sale by June 1, 2022, (2) the parties take all steps and execute any documents necessary to facilitate the listing and sale, and (3) the proceeds be used to pay any encumbrances on the Property and then split by the parties 50/50.  *Id.*  The state court did not rule on Scroggins's request for attorney's fees, expenses, and interest.  *Id.*

Contrary to the state court's order, the Property was not listed for sale by Mr. Landry by June 1, 2022.  *Id.*   On June 24, 2022, Ms.

---

[5] The pre-bankruptcy background in this case was thoroughly explained by Justice Wilson of the Fourteenth District Court of Appeals.  *Landry v. Scroggins*, No. 14-23-00728-CV, 2025 WL 1561532 (Tex. App.—Houston June 3, 2025).

[6] Case No. 25-35208, ECF No. 44-2.

Scroggins filed an "Emergency Motion for Relief Following Partition Order and Request for Sanctions." *Id.* In her motion, Ms. Scroggins alleged that Mr. Landry was preventing the Property from being listed and shown to potential buyers by "destroying the home, threatening the realtors, and refusing to cooperate." *Id.* In October 2022, Ms. Scroggins filed a petition for enforcement of the June 2021 order and asked the court to hold Mr. Landry in contempt for failure to comply with the order. *Id.*

In March 2023, Ms. Scroggins sued Mr. Landry in the 400th District Court of Fort Bend County, Texas, seeking a partition of the Property under chapter 23 of the Texas Property Code and the Texas Rules of Civil Procedure. *Id.* at \*2. Alternatively, she asserted a claim against Mr. Landry to quiet title to the Property and a requested a declaratory judgment that Mr. Landry's claim to her 50% interest in the Property was void. *Id.* Ms. Scroggins also requested that a receiver be appointed with the authority to take possession of the Property, sell it, and distribute the net proceeds. *Id.*

In June 2023, Ms. Scroggins moved for summary judgment on her request for partition. *Id.* She also argued that she was entitled to summary judgment on Mr. Landry's affirmative defenses of res judicata and collateral estoppel. *Id.* Ms. Scroggins further argued that she was entitled to a declaratory judgment regarding Mr. Landry's claim to her interest in the Property and that she was entitled to a judgment ordering the partition and sale of the Property, appointing a receiver, and awarding her attorney's fees and costs. *Id.*

In August 2023, the 400th District Court granted Ms. Scroggins' motion for summary judgment and issued a final judgment resolving all claims. *Id.* The state court (1) declared Mr. Landry's claim to Ms. Scroggins interest in the Property was void; (2) overruled Mr. Landry's affirmative defenses; (3) ordered the partition and sale of the Property; (4) appointed a receiver for the sale of the Property; (5) awarded Ms. Scroggins a $26,000 judgment against Mr. Landry for attorneys' fees; (6) conditionally awarded Ms. Scroggins a $25,000 judgment for attorneys'

fees in the event that Mr. Landry took an unsuccessful appeal; and (7) ordered that Ms. Scroggins shall have all writs of execution and other processes necessary to enforce the judgment.[7]

The state court appointed Hilary Harmon as Receiver of the Property.[8]  The state court authorized her to sell the Property and to do any and all acts reasonably necessary to the proper and lawful conduct of the receivership.[9]  The order appointing the Receiver also ordered Mr. Landry to cooperate with the Receiver in completing her receivership duties.[10]  Mr. Landry was specifically ordered to deliver access and possession of the Property in its entirety without restraint or restriction within 24 hours of the entry of the receivership order.[11]  Mr. Landry remained in the Property (with a brief interruption described below) until December 11, 2025.

Mr. Landry appealed the judgment issued by the 400th District Court to the Fourteenth Court of Appeals of Texas.  *See Landry v. Scroggins*, No. 14-23-00728-CV, 2025 WL 1561532 (Tex. App.—Houston June 3, 2025).  In June 2025, the state court of appeals issued its opinion affirming the 400th District Court.  *Id.*

On August 19, 2025, the 400th District Court issued a writ of possession in favor of the Receiver granting her possession of the Property.[12]  The writ of possession ordered the Constable of Precinct Two of Fort Bend County to deliver possession of the Property to the Receiver.[13]

---

[7] ECF No. 15-1.

[8] ECF No. 15-2.

[9] *Id.*

[10] *Id.* at 2−3.

[11] *Id.*

[12] ECF No. 15-8.

[13] *Id.*

On September 2, 2025, the Constables attached a 24-Hour Notice to Vacate to the front door of the Property at 9:15 a.m.[14]  The notice stated that Mr. Landry must vacate the Property by September 3, 2025, at 12:00 p.m.  It informed him that if he did not vacate the property, he could and would be evicted at any time on or after September 4, 2025.[15] At 10:25 p.m. on September 2, 2025, Mr. Landry filed his Chapter 13 Bankruptcy petition.[16]

On September 3, 2025, Mr. Landry's counsel, Samuel Milledge, Sr., filed a suggestion of bankruptcy in the 400th District Court, which informed the court that Mr. Landry had filed a Chapter 13 Bankruptcy case on September 2, 2025.[17]  The automated certificate of service generated by the state court filing system indicates that the Receiver was sent a copy of the suggestion of bankruptcy on September 3, 2025, at 1:13 p.m.[18] Additionally, the internal records of the Fort Bend County Precinct Two Constable's Office reflect the following entry on September 3, 2025, at 11:20 a.m.:

> THE DEFENDANT CAME IN PERSON WITH DOCUMENTS REGARDING FILING BANKRUPTCY (A COPY OF THE DOCUMENT WAS SCANNED INTO THE CORRESPONDENCE). THE DEFENDANT WAS ADVISED THAT BRINGING THE DOCUMENTS TO THIS OFFICE DOES NOT STOP THE PROCEEDING OF THE POSSESSION. HE WAS REDIRECTED TO THE RESPECTIVE DISTRICT COURT WHERE HE MAY FILE THE DOCUMENTS FOR THE CASE. *IT WAS REITERATED THAT THE JUDGE HAS TO REVIEW THE DOCUMENTS, APPROVE/DENY, WHETHER TO STAY OR PROCEED. AGAIN, WITH CLEAR REITERATIONS THAT UNLESS THIS OFFICE*

---

[14] ECF No. 15-6.

[15] *Id.*

[16] Case No. 25-35208, ECF No. 1

[17] Case No. 25-35208, ECF No. 51, at 6.

[18] *Id.* at 8.

*RECEIVE DOCUMENTATION FROM THE COURT OF PLAINTIFF'S ATTORNEY/RECEIVER OUR OFFICE WILL PROCEED WITH THE COURT ORDERED POSSESSION.* THE DEFENDANT ACKNOWLEDGED THAT HE UNDERSTOOD THIS OFFICE POSITION. THE PLAINTIFF'S ATTORNEY/RECEIVER AND FORT BEND COUNTY DISTRICT CLERKS OFFICE INFORMATION WAS PROVIDED TO THE DEFENDANT.[19]

On September 4, 2025, the Constables proceeded with evicting Mr. Landry from the Property.[20] The scene on the day of the eviction was hectic. Multiple deputies from the Constable's Office and Constable Daryl Smith himself were on scene, along with the Receiver and movers she hired.[21]

Mr. Landry did not voluntarily vacate the premises and there were heated discussions between Mr. Landry and the Constables and Receiver through an open window in the home.[22] The locksmith on scene was unable to pick the lock, so the Constables tore the screen affixed to the window and entered the home through the window.[23] Mr. Landry called the Missouri City police while the Constables entered the home, but Constable Smith took the phone and notified them that their services were not necessary.[24] Mr. Landry was detained, handcuffed, and placed in the back of one of the Constable's vehicles.[25]

Following Mr. Landry's removal, the movers removed Mr. Landry's personal property from the Property, placed it in the front

---

[19] *Id.* at 3 (emphasis added).

[20] *See* Recording of October 27, 2025 Evid. Hearing at 13:20−42:25 (this portion of Mr. Landry's testimony includes both his recollection of events and his testimony regarding damages which included further recollection of the events).

[21] *Id.*

[22] *Id.* at 13:25−14:45.

[23] *Id.* at 15:00−15:35.

[24] *Id.* at 16:00−16:40.

[25] *Id.* at 16:35−16:56.

lawn, and delivered possession of the Property to the Receiver.[26]  Mr. Landry alleged that the movers handled his personal property carelessly (e.g., throwing it in the yard, ripping items from the walls, cutting wires, etc.) and did damage to the home, especially to the wood flooring.[27] Constable Smith's testimony differed, and his recollection of events was that the movers carefully handled Mr. Landry's property.[28]  Captain Ibok from the Fort Bend County Precinct Two Constable's Office similarly testified that the movers handled the property with care.[29] The night that Mr. Landry was evicted, he, with the assistance of friends and family, rented a truck and recovered some of his personal property that was placed outside the Property.[30]  Mr. Landry testified that much of his personal property was stolen by looters after being left outside.[31]

On September 4, 2025, Mr. Landry initiated this adversary proceeding, seeking an injunction to prevent his eviction.[32]  The Court notes that when Mr. Landry's adversary complaint was filed at 4:01 p.m., his eviction had already occurred.[33]

On September 7, 2025, Mr. Landry, filed a motion to regain possession of the Property in his bankruptcy case and requested that his motion be heard on an emergency basis.[34]  On September 8, 2025, the Court held a hearing on Mr. Landry's motion.[35]  Following the hearing, the Court ordered the Receiver to give Mr. Landry immediate possession

---

[26] *Id.* at 19:30−24:35.

[27] *Id.*

[28] *Id.* at 1:51:00-1:52:30.

[29] *Id.* at 2:11:00−2:12:45.

[30] *Id.* at 2:12:10−2:12−45.  The extent of property recovered was unclear from Mr. Landry's testimony.

[31] Recording of Feb. 2, 2026 Evid. Hearing at 59:00−1:02:30.

[32] ECF No. 1.

[33] *Id.*

[34] Case No. 25-35208, ECF Nos. 8−9.

[35] Case No. 25-35208, ECF No. 12.

of the Property and deferred ruling on the stay violation pending a full evidentiary hearing.[36]

On October 27, 2025, the Court held an evidentiary hearing, and the parties presented documentary evidence and witness testimony.[37] On November 5, 2025, the Court requested that the parties meet to discuss a potential resolution of this issue.[38] On November 7, 2025, the parties filed a status report indicating that they agreed to attempt to reach a consensual resolution.[39]

Although the automatic stay was violated when the parties proceeded with the eviction, that did not end matters. Following an evidentiary hearing, the Court found that cause existed to allow the state court's orders to be fully implemented.

On December 4, 2025, the Court modified the automatic stay and ordered Mr. Landry to vacate the Property.[40] In the order modifying the stay, the Court allowed the Receiver to begin marketing the Property pursuant to the state court orders.[41] The order further provided that any sale of the Property could be consummated only after notice and a hearing, and that any proceeds of the sale must be deposited in the registry of the Court.[42] On December 15, 2025, Mr. Landry filed a *pro se* motion to reconsider the order modifying the automatic stay,[43] which the Court denied on December 17, 2025.[44]

---

[36] Case No. 25-35208, ECF No. 13.

[37] *See* Case No. 25-35208, ECF No. 47.

[38] *See* Case No. 25-35208, ECF No. 62.

[39] *See* Case No. 25-35208, ECF No. 64.

[40] *See* Case No. 25-35208, ECF No. 81.

[41] *Id.*

[42] *Id.*

[43] Case No. 25-35208, ECF No. 89.

[44] Case No. 25-35208, ECF No. 90.

On February 2, 2026, the Court held another evidentiary hearing in this matter.[45]  The contents of this hearing were largely duplicative of the October 27, 2025 hearing as Mr. Landry again provided his recitation of the events of his September 2025 eviction.  At the conclusion of the February 2, 2026 hearing, the Court dismissed Mr. Landry's claim against Ms. Scroggins, finding that there was no evidence of any wrongdoing on her part.[46]  And on March 5, 2026, Mr. Landry filed a motion to approve his compromise with  Constable Smith that settled the claims Mr. Landry asserted against the Constable in the adversary proceeding.[47]  The Court approved this settlement on March 27, 2026.[48]  No settlement has been reached between Mr. Landry and the Ms. Harmon, the Receiver.  The Receiver is the last remaining Defendant in this adversary proceeding.

## JURISDICTION & VENUE

28 U.S.C. § 1334(a) provides the District Court with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A) and (B). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[45] Case No. 25-35208, ECF No. 113.

[46] Recording of Feb. 2, 2026 Evid. Hearing at 26:20−26:50.

[47] Case No. 25-35208, ECF No. 119.

[48] Case No. 25-35208, ECF No. 137.

## LEGAL STANDARD

The filing of a bankruptcy petition, subject to limited exceptions, operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. § 362(a)(1)−(3).  Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  In the Fifth Circuit, the automatic stay applies to property "to which the debtor has only an arguable claim of right."  *In re Chesnut*, 422 F.3d 298, 300 (5th Cir. 2005).

Section 362(k) of the Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k).

## DISCUSSION

### I.   VIOLATION OF THE AUTOMATIC STAY

There are three elements to a 362(k) claim: (1) the defendant must have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3) these acts must have violated the stay.  *In re Repine*, 536 F.3d 512, 519 (5th Cir. 2008).

First, with respect to Constable Smith, it is undisputed that he had notice of Mr. Landry's bankruptcy. Although Constable Smith testified that his office was not personally aware of Mr. Landry's bankruptcy,[49] and the Court credits his testimony, Mr. Landry hand delivered his suggestion of bankruptcy to the Constable's office, and a copy of the document was scanned into the Constable's Office records.[50] This unquestionably constitutes actual notice.

The Receiver testified that she did not have actual notice of Mr. Landry's bankruptcy.[51] However, the record indicates on September 3, 2025, at 1:13 p.m., the Receiver was sent an email indicating that Mr. Landry had filed a suggestion of Bankruptcy in the 400th District Court of Fort Bend County, Texas.[52] The Court finds that this constitutes constructive notice, which is "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of." *Constructive Notice*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Tow v. Henley (In re Henley)*, 480 B.R. 708, 799 (Bankr. S.D. Tex. 2012). Although the Receiver has asserted that she did not receive the email notifying her of the suggestion of bankruptcy,[53] she also failed to check the state court docket before proceeding with the eviction. She is charged with notice of the bankruptcy.

The Constable's and the Receiver's eviction of Mr. Landry was intentional. A willful violation of the stay does not require specific intent to violate the automatic stay; it only requires that the defendant's actions were intentional. *In re Chesnut*, 422 F.3d at 302. A defendant's good faith belief is not relevant. *Id.* It is undisputed that both the Constable and Receiver intended to evict Mr. Landry.

---

[49] Recording of Oct. 27, 2025 Evid. Hearing at 1:48:00−1:50:35.

[50] Case No. 25-35208, ECF No. 51, at 3.

[51] Recording of Oct. 27, 2025 Evid. Hearing at 1:20:40−1:21:28.

[52] Case No. 25-35208, ECF No. 51, at 6−8.

[53] Recording of Nov. 5, 2025 Hearing at 7:50−10:24.

Lastly, the eviction of Mr. Landry undoubtedly constituted a violation of the automatic stay.  Mr. Landry's eviction, pursuant to a state court order is the definition of "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title."  11 U.S.C. 362(a)(2).  And it is undisputed that Mr. Landry had an arguable claim of right in the Property at the time of his eviction.  *In re Chesnut,* 422 F.3d at 300.

## II.   ACTUAL DAMAGES

To recover under section 362(k), the plaintiff "has the burden of proving actual damages, and such damages must be proved with reasonable certainty and may not be speculative or based on conjecture." *Garza v. CMM Enters., LLC (In re Garza)*, 605 B.R. 817, 829 (Bankr. S.D. Tex. 2019).

Mr. Landry's testimony has been inconsistent throughout the course of these proceedings.  At times, he has stated under oath that everything in the home was "destroyed."[54]  Concurrently, he has stated under oath that his friends and family rented a truck the day he was evicted and picked up some of his personal property.[55]  At the same time, much of the personal property for which Mr. Landry is seeking damages was not listed on his Schedules.[56]  Moreover, Mr. Landry's testimony that he had no knowledge of the state court orders requiring him to vacate the Property that date back to 2021 (including the orders that he appealed to the Fourteenth Court of Appeals) was so obviously false that it decimated his credibility on disputed factual issues.[57]

Listed in the Table below are all the items Mr. Landry is seeking damages and Mr. Landry's assessment of their respective damages.

---

[54] Recording of Oct. 27, 2025 Evid. Hearing at 19:50−19:58.

[55] *Id.* at 25:40−26:55.

[56] *Compare* Case No. 25-35208, ECF No. 1, at 9−20, *with id.* at 24:40−40:45.

[57] Recording of Dec. 4, 2025 Hearing at 43:40−44:05.

**Table 1: All Claimed Damages**

| Item: | Claimed Amount: | Citation |
|---|---|---|
| Food | $1,200.00 | Oct. 27, 2025 Evid. Hearing at 24:40−25:20. |
| Men's Shoes | $11,500.00 | *Id.* at 28:20−29:40. |
| Hotel Room – 1 Night | $160.00 | *Id.* at 27:40−28:00. |
| Glassware/Plates/China | $6,500.00 | *Id.* at 29:40−30:30. |
| Patio Furniture | $9,000.00 | *Id.* at 30:30−31:25. |
| Pool Equipment | $5,000.00 | *Id.* at 31:30−32:00. |
| Cash | $1,200.00 | *Id.* at 32:05−32:40. |
| Cell Phone | No Value Provided | *Id.* at 32:45−33:10. |
| Fax Machine, Printer, and Rugs | $3,000.00 | *Id.* at 33:10−33:54. |
| Televisions | $1,500.00 | *Id.* at 33:55−34:45. |
| Tools & Lawncare Equipment | $4,000.00 | *Id.* at 34:45−36:30. |
| Miscellaneous Electronics and CDs/Video Games | $4,000.00 | *Id.* at 36:30−38:15. |
| Personal Property in Daughter's Room | No Value Provided | *Id.* at 38:15−38:25. |
| Refrigerator | $2,000.00 | *Id.* at 38:25−39:40. |
| Washing Machine | $700.00 | *Id.* at 39:40−40:45. |
| Floor Replacement | $39,000.00 | *Id.* at 40:45−42:10. |
| Beds | No Value Provided | Feb. 2, 2026 Evid. Hearing at 51:00−54:30. |
| **Total Damages Sought:** | **$88,760.00** | |

### A.    *Judicial Estoppel and Testimonial Credibility*

The Fifth Circuit has held that a debtor is judicially estopped from receiving any benefit from an asset that he did not disclose on his initial bankruptcy schedules. *See Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011); *Love v. Tyson Foods, Inc.*, 677 F.3d 258 (5th Cir. 2012). "The doctrine of judicial estoppel prevents a party from asserting a claim

in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed*, 650 f.3d at 573−74. "[T]he Supreme Court has refused to establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 574 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749−50 (2001) (internal quotations omitted)). Indeed, "[b]ecause the doctrine is equitable in nature, it should be applied flexibly with an intent to achieve substantial justice." *Id.*

Specifically, in bankruptcy proceedings, "judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Id.* "In assessing whether judicial estoppel should apply, we look to see whether the following elements are present: (1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.*

Large portions of Mr. Landry's testimony were incredible. In the last 22 years, the Court has not observed any previous debtor with over $11,000.00 in men's shoes. The photos of Mr. Landry's floor damage showed some repairs were required, but they fell far short of entitling him to wholly replace all of the wooden flooring in his home. Put simply, the Court finds that the credibility of the testimony is further downgraded by the conflicts with his schedules.

Two of the three elements for judicial estoppel are met. First, when Mr. Landry signed his bankruptcy petition, he expressly acknowledged that "[b]y signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct."[58] He now seeks damages for over $49,000 dollars of personal property (specifically personal and household items), while his

---

[58] Case No. 25-35208, ECF No. 1, at 56.

schedules listed less than $30,000 in personal property in total.[59]  Mr. Landry's current position of the value of his personal and household items is plainly inconsistent with his prior position.

The second factor, court acceptance of the prior position, is not present.  Bankruptcy courts have found this factor satisfied where the court issues a discharge after accepting the debtor's position.  *See In re DeRosa-Grund*, 544 B.R. 339, 370−71 (Bankr. S.D. Tex. 2016).  The Court has not entered a discharge, nor has it confirmed any plan in Mr. Landry's bankruptcy case.

Third, Mr. Landry did not inadvertently fail to disclose assets on his schedules.  Mr. Landry has the burden of proof to establish inadvertence.  *In re Jackson*, Case No. 06-36268, 2012 Bankr. LEXIS 3496, at *86 (Bankr. S.D. Tex. July 27, 2012), *aff'd per curiam*, 574 F.App'x 317 (5th Cir. 2014).  At the February 2, 2026 evidentiary hearing, Mr. Landry blamed his counsel for the omission of any personal property not included on his Schedule A/B.[60]  This Court has previously held that "[i]t is Black Letter law that a debtor who reviews his Schedules with his attorney cannot blame his attorney for inaccuracies in the Schedules—even if the debtor is purportedly inexperienced with financial affairs."  *In re DeRosa-Grund*, 544 B.R at 380.  Additionally, even if Mr. Landry had not reviewed his Schedules with counsel before signing them, Supreme Court precedent precludes a client from escaping the legal consequences of his attorney's negligent conduct.  *Id.* (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 633−34 (1962)).

Given the nature of Mr. Landry's incredible testimony, and Mr. Milledge's well-deserved reputation for integrity, the Court will not toss Mr. Milledge "under the bus" based on a client who lacks credibility on so many other matters.

---

[59] *Compare* Table 1, *supra*, *with id.* at 18.

[60] Recording of Feb. 2, 2026 Evid. Hearing, at 1:09:00−1:20:00.

Because two of the three factors for judicial estoppel are satisfied, and because there is no "exhaustive formula for determining the applicability of judicial estoppel," *Reed*, 650 f.3d at 573–74, in light of the significant disparity of value between Mr. Landry's scheduled assets and assets for which he claims damages and his repeated misrepresentations before this Court, Mr. Landry is judicially estopped from recovering any actual damages for personal property not listed on his Schedule A/B.  Below is an analysis of items Mr. Landry is estopped from recovering damages for.  Even if Mr. Landry is not estopped and an item is listed as "Recoverable" or "Recoverable in part," Mr. Landry still bears the burden proving damages with reasonable certainty.

**Table 2: Estoppel Analysis of Claimed Damages**

| Item: | Claimed Amount: | Analysis: | Maximum Potential Recovery: |
|---|---|---|---|
| Food | $1,200.00 | Not listed on Schedules. Estopped from recovery.[61] | $0.00 |
| Men's Shoes | $11,500.00 | Recoverable in part (subject to evidentiary proof). Listed on Schedules. Claimed damages greater than scheduled amount. Recoverable damages limited to $4,000.[62] | $4,000.00 |
| Hotel Room – 1 Night | $160.00 | Recoverable (subject to evidentiary proof).  No estoppel issues present. | $160.00 |
| Glassware/ Plates/China | $6,500.00 | Not listed on Schedules. Estopped from recovery.[63] | $0.00 |

---

[61] Case No. 25-35208, ECF No. 1, at 11 ¶ 14 (not listing "[a]ny other personal and household items you did not already list, including any health aids you did not list").

[62] *Id.* at 11 ¶ 11 (listing 20 pairs of shoes worth $4,000).

[63] *Id.* at 10, 20 (not listing any glasses, plates, or china under household goods and furnishings).

| Item: | Claimed Amount: | Analysis: | Maximum Potential Recovery: |
|---|---|---|---|
| Patio Furniture | $9,000.00 | Not listed on Schedules. Estopped from recovery.[64] | $0.00 |
| Pool Equipment | $5,000.00 | Not listed on Schedules. Estopped from recovery.[65] | $0.00 |
| Cash | $1,200.00 | Not listed on Schedules. Estopped from recovery.[66] | $0.00 |
| Cell Phone | No Value Provided | Not listed on Schedules. Estopped from recovery.[67] | $0.00 |
| Fax Machine, Printer, and Rugs | $3,000.00 | Not listed on Schedules. Estopped from recovery.[68] | $0.00 |
| Televisions | $1,500.00 | Recoverable (subject to evidentiary proof).  Listed on Schedules, claimed damages less than amount listed on Schedules.[69] | $1,500.00 |
| Tools & Lawncare Equipment | $4,000.00 | Not listed on Schedules. Estopped from recovery.[70] | $0.00 |
| Miscellaneous Electronics and CDs/Video Games | $4,000.00 | Recoverable in part (subject to evidentiary proof).  Listed in part on Schedules, claimed damages greater than | $700.00 |

[64] *Id.* at 10 ¶ 6, 20 (not listing any patio furniture but listing other furniture).

[65] *Id.* at 11 ¶ 14 (not listing "[a]ny other personal and household items you did not already list, including any health aids you did not list").

[66] *Id.* at 12 ¶ 16 (not listing any Cash in wallet, in home, in a safe deposit box, or on hand at the time of the petition).

[67] *Id.* at 10 ¶ 7 (not listing any cell phone among electronics).

[68] *Id.* at 10 ¶ 7 (not listing any printer or fax machine among electronics); *see also id.* at 10 ¶ 6, 20 (not listing any rugs under household good and furnishings).

[69] *Id.* at 10 ¶ 7 (listing 4 televisions worth $3,150).

[70] *Id.* at 11 ¶ 14 (not listing "[a]ny other personal and household items you did not already list, including any health aids you did not list").

| Item: | Claimed Amount: | Analysis: | Maximum Potential Recovery: |
|---|---|---|---|
| | | amount listed on Schedules.  Recoverable damages limited to $700.[71] | |
| Personal Property in Daughter's Room | No Value Provided | Not listed on Schedules. Estopped from recovery.[72] | $0.00 |
| Refrigerator | $2,000.00 | Recoverable (subject to evidentiary proof).  Listed on Schedules, claimed damages less than amount listed on Schedules.[73] | $2,000.00 |
| Washing Machine | $700.00 | Recoverable (subject to evidentiary proof).  Listed on Schedules, claimed damages less than amount listed on Schedules.[74] | $700.00 |
| Floor Replacement | $39,000.00 | No estoppel issues present | $39,000.00 |
| Beds | No Value Provided | Recoverable (subject to evidentiary proof).  Listed on Schedules, no claimed damages provided.[75] | $0.00 |
| **Total Potential Recovery After Estoppel:** | | | **$48,060.00** |

### B.    Recoverable Actual Damages

In light of the Court's judicial estoppel, a substantial portion of the actual damages Mr. Landry seeks are unrecoverable.  For the remaining items that Mr. Landry seeks damages, he still bears the

---

[71] *Id.* at 10 ¶ 6, 20 (listing 1 console worth $700).

[72] *Id.* at 9–20 (Not listing any specific property and testimony gave no detail).

[73] *Id.* at 10 ¶ 6, 20 (listing 1 large refrigerator/freezer worth $3,500).

[74] *Id.* (listing 1 dryer worth $2000).

[75] *Id.* (listing 3 beds worth $3,050).

burden of proving actual damages with "reasonable certainty." *In re Garza*, 605 B.R. at 829. As noted above, the Court held multiple evidentiary hearings on this matter and heard Mr. Landry testify regarding damages multiple times.

Regarding Mr. Landry's claimed damages for shoes, Mr. Landry's has met his burden to recover $4,000, the amount listed on his Schedule A/B.[76] While Mr. Landry testified that he had many more pairs of shoes that he had accumulated over the years (some being from designer brands),[77] and the Court finds that his testimony was not entirely incredible, he is judicially estopped from recovering a greater amount than he listed on his schedules.

Mr. Landry has met his burden to recover the $160 hotel room expense that he incurred on the date he was evicted in violation of the automatic stay before he later stayed with a friend.[78] The Court finds that his testimony regarding the amount of the hotel room was credible[79] and finds that $160 for a hotel room for one night is a reasonable expense.

Mr. Landry has met his burden to recover $1,500 for his televisions that were damaged by the movers on the date he was evicted in violation of the automatic stay. His schedules estimated a higher value of the televisions of $3,150,[80] and it was unclear from his testimony how many of his televisions were broken.[81] Nevertheless, the Court finds his testimony regarding the claimed amount of damages for the broken televisions to be credible and finds that $1,500 for multiple broken televisions is a reasonable estimate of damages.

---

[76] *Id.* at 11 ¶ 11.

[77] Oct. 27, 2025 Evid. Hearing at 28:20−29:40.

[78] *Id.* at 27:40−28:20.

[79] *Id.* at 27:40−28:00.

[80] Case No. 25-35208, ECF No. 1, at 10 ¶ 7.

[81] Oct. 27, 2025 Evid. Hearing at 33:55−34:45.

Mr. Landry has not met his burden to recover damages for his refrigerator. Mr. Landry testified that the movers broke his refrigerator when they cut the wire on his refrigerator.[82]  Mr. Landry's schedules estimated that his refrigerator was worth $3,500,[83] and he testified that it would cost $2,000 to replace his refrigerator. While the Court finds Mr. Landry's testimony to be credible on his narrow issue, it does not find Mr. Landry has met his burden of proving that he should recover damages equal to the cost of a new refrigerator.  The purchase of a new refrigerator in these circumstances would constitute economic waste when his current refrigerator could be repaired at a much lower cost. Mr. Landry did not present any evidence of the cost of repair.  Thus, because Mr. Landry has failed to meet his evidentiary burden, he will not recover damages for his refrigerator.

Mr. Landry has met his burden to recover $700 for his washing machine.  Mr. Landry testified that the movers broke his washing machine when they removed it from the home.[84] Mr. Landry's schedules estimated that both his washing machine and dryer together were worth $4,000,[85] and he testified that it would cost $700 to replace his washing machine.  The Court finds Mr. Landry's testimony to be credible on his issue and finds that $700 is a reasonable estimate of damages to replace a washing machine.

Mr. Landry has not met his burden to recover damages for his allegedly broken/damaged/stolen beds.  Mr. Landry's schedules estimated that his three king-sized beds were worth $3,050.[86]  Mr. Landry's testimony regarding his beds was unclear to the Court.  He testified that his beds were "destroyed" but also testified the only thing broken were his bed slats (the wooden planks that go underneath a

---

[82] *Id.* at 38:25−39:40.

[83] Case No. 25-35208, ECF No. 1, at 10 ¶ 6, 20.

[84] Oct. 27, 2025 Evid. Hearing at 39:40−40:45.

[85] Case No. 25-35208, ECF No. 1, at 10 ¶ 6, 20.

[86] *Id.*

mattress).[87]  He also testified that he, with the assistance of friends and family recovered the beds on the day he was evicted (and it is unclear whether he was referring to the bed frames or mattress') .[88]  He testified that he did not provide an estimate of the replacement value because he was waiting for the Court to rule on damages.[89]  Given the unclear testimony of what happened to the beds, the potentially limited extent of the damage, and the fact that no evidence of the value of the damage to the beds was provided, the Court finds that Mr. Landry has failed to meet his evidentiary burden.  He will not recover damages for his beds.

Mr. Landry has met his burden to recover $700 for miscellaneous electronics/CDs/video games.  Mr. Landry listed one console worth $700 on his schedules.[90]  And he testified about the console as well as other related items during the October 27, 2025 evidentiary hearing.[91]  The Court credits Mr. Landry's testimony regarding these items.  However, because he did not list any of the other related items on his schedule, he is judicially estopped from recovering more than $700.  Thus, Mr. Landry will recover $700 for the console.

Lastly, Mr. Landry has not met his evidentiary burden to recover the cost of replacing the floors of the home located on the Property.  Mr. Landry seeks $39,000 in damages, which he testified was the cost of replacing the wooden floors.[92]  Mr. Landry testified that the movers hired by the Receiver dragged his personal property through the home and severely damaged the floors.[93]  Photographs of the floors were admitted on February 2, 2026.[94]  The photographs show some minor damage to the floors, with some lighter scratches and a few fairly

---

[87] Feb. 2, 2026 Evid. Hearing at 51:00−54:30.

[88] Oct. 27, 2025 Evid. Hearing at 25:40−26:00.

[89] Feb. 2, 2026 Evid. Hearing at 42:00−54:30.

[90] Case No. 25-35208, ECF No. 1, at 20.

[91] Oct. 27, 2025 Evid. Hearing at 36:30−38:15.

[92] *Id.* at 40:50−42::20.

[93] *Id.*

[94] Case No. 25-35208, ECF No. 110-5, at 1−9.

damaged boards.  The photos also show that some transition pieces between rooms have been removed.[95]  Mr. Landry is no longer living in the home as it has been sold by the Receiver.  However, awarding Mr. Landry damages of $39,000 for the cost of replacing the floors is not reasonable.  While there was some damage to the floors, replacement of the floors would constitute economic waste when the cost of replacing the few damaged boards and transitions would be much lower.  Mr. Landry did not present any evidence of the cost of repair.  Mr. Landry has not met his evidentiary burden to recover damages for the damaged floors.

Mr. Landry is judicially estopped from recovering a large portion of his claimed actual damages.  For the portions which Mr. Landry is not estopped from recovering, he has carried his burden for $7,060.  The Table below summarizes the actual damages the Court will award Mr. Landry, excluding attorneys' fees.

**Table 3: Actual Damages Awarded**

| Item: | Damages Awarded |
|---|---|
| Men's Shoes | $4,000.00 |
| Hotel | $160.00 |
| Televisions | $1,500.00 |
| Miscellaneous Electronics and CDs/Video Games | $700.00 |
| Washing Machine | $700.00 |
| **Total:** | **$7,060.00** |

### III.  ATTORNEYS' FEES

Section 362(k) of the Code specifically includes attorneys' fees as actual damages.  11 U.S.C. § 362(k)(1).  "Although section 362(k) does not limit the amount of attorneys' fees and costs to be awarded under that section, courts have determined that such an award must be reasonable and necessary, and that courts should closely scrutinize the fees requested by attorneys for unnecessary and excessive charges."

---

[95] *Id.*

*Garza v. CMM Enters., LLC (In re Garza)*, 605 B.R. 817, 831 (Bankr. S.D. Tex. 2019) (internal quotations omitted).

Mr. Landry's counsel, Samuel Milledge, Sr. has requested $24,000 in attorneys' fees.[96]  Mr. Milledge testified that this expense represents 60 hours of work at a rate of $400 per hour.[97]  Mr. Milledge did not keep contemporaneous time records reflecting the time he spent working on this case.[98]  Generally, "contemporaneous time should be kept, but the failure to keep them is not necessarily fatal."  *In re Porcheddu*, 338 B.R. 729, 737 (Bankr. S.D. Tex. 2006).

The determination of reasonable attorneys' fees are "a matter of discretion with the Court." *Loncarevic v. Loncarevic*, Case No. 4:24-CV-2634, 2025 WL 1167564, at *2 (S.D. Tex. Apr. 22, 2025) (Hanen, J.). Federal courts awarding attorneys' fees in connection with a statutory violation typically employ the lodestar approach. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550−51 (2010).  Under the lodestar method, the Court first calculates the compensable hours billed and then calculates a reasonable hourly rate for the compensable services. *In re Digerati Techs., Inc.*, 537 B.R. 317, 332 (Bankr. S.D. Tex. 2015).   The Court may adjust the lodestar up or down based on the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718−19 (5th Cir. 1974).  The Supreme Court has stated that "[w]here the documentation of hours is inadequate, the [] court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the required skill to perform the legal service properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the

---

[96] Recording of Feb. 2, 2026 Evid. Hearing at 1:38:45−1:40:25.

[97] *Id.*

[98] *Id.*

experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 718–19.  The Supreme Court has indicated that the "results obtained" is the most important factor.  *Hensley*, 461 U.S. at 434

Here, the Court credits Mr. Milledge's testimony regarding the hours he spent working on this case.  Mr. Milledge is an experienced attorney who has been practicing law in Texas since 1985.[99]  Mr. Milledge's long service and high standards have earned the respect of the Court.[100]  And the Court has no doubts about Mr. Milledge's veracity. Additionally, the Court finds that $400 is a reasonable hourly rate for a bankruptcy attorney in Houston, Texas.

Considering the *Johnson* factors, the Court notes that this case has required extensive attorney time with multiple hours-long evidentiary hearings, discovery, and motion practice, and has been pending for over 6 months.  The Court finds that, on balance, Mr. Milledge has obtained good results in this case.  Before Mr. Landry's eviction, Mr. Milledge filed a timely suggestion of bankruptcy with the state court and instructed Mr. Landry to deliver that notice to the Constable.  Absent this advice, likely no damages from the violation of the automatic stay would been awarded.  Following the violation of the automatic stay, Mr. Milledge was able to get Mr. Landry back into the Property in less than 3 business days.  And, while Mr. Landry was later ordered to vacate the premises, this was due to Mr. Landry's actions over many months, not any conduct by Mr. Milledge.  In this case, Mr. Milledge has successfully negotiated a favorable settlement for his client and his work in this case should be commended.

However, Mr. Milledge's lack of contemporaneous time records gives the Court pause.  Additionally, Mr. Landry failed to meet his

---

[99] Case No. 25-35208, ECF No. 110-6, at 1.

[100] Case No. 25-35208, ECF No. 128, at 1.

evidentiary burden as to the actual damages on multiple pieces of his personal property. Mr. Landry likely could have recovered more damages if the Court was presented with a more complete evidentiary record. Also, although the Court does not doubt that Mr. Milledge has spent a substantial amount of time on this adversary proceeding, without contemporaneous time records it is extremely difficult to assess whether the hours he spent were reasonable and necessary and distinguish between the hours spent on this adversary proceeding and Mr. Landry's main bankruptcy case. For those reasons, the Court will reduce Mr. Milledge's awarded attorney's fees by 35%.

Thus, of the $24,000 requested, the Court awards Mr. Milledge $15,600 in attorneys' fees.

### IV.    PUNITIVE DAMAGES

Section 362(k) also provides for punitive damages in "appropriate circumstances." 11 U.S.C. § 361(k)(1). The Fifth Circuit has held that "egregious, intentional misconduct" is required to award punitive damages. *In re Repine*, 536 F.3d 512, 512 (5th Cir. 2008). The availability of punitive damages is designed to deter prospective stay violators from vindicating their interests in violation of the automatic stay. *Gates v. RAC Acceptance Tex., LLC (In re Gates)*, 621 B.R. 129, 139 (Bankr. W.D. Tex. 2020).

Here, the circumstances are inappropriate for punitive damages. The claims against the Constables Office have been settled. And the Court found that the Receiver's testimony that she had no actual notice of Mr. Landry's bankruptcy to be credible under the totality of the circumstances in this case, and her actions do not justify an award of punitive damages.

The Court also concludes that—even if the Receiver had not arrived at the Property—the then-applicable Constable's policy would have resulted in the same eviction. The Receiver did not act with malice, and was carrying out her duties with respect to a litigant (Mr. Landry) who had repeatedly failed to comply with the state court's orders. Mr.

Landry may not receive an equitable award of punitive damages following his own inequitable conduct.

### V.   ALLOCATION OF AWARD OF DAMAGES

Although it is a slightly unusual situation where multiple persons are liable for a single automatic stay violation, in such situations, courts in this circuit have awarded damages against defendants, jointly and severally. *See Rojas v. Gomez (In re Rojas),* Case No. 18-31127, Adv. No. No. 23-03026, 2024 WL 2855769, at *13 (Bankr. N.D. Tex. 2024). Violating the automatic stay is akin to committing an intentional tort. *Compare In re Chesnut*, 422 F.3d at 302 (explaining that a willful violation of the automatic stay does not require a specific intent to violate the automatic stay but rather requires the defendant's actions which violated the stay to be intentional), *with* RESTATEMENT (SECOND) OF TORTS § 8A (A.L.I. 1965) ("The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.").

Mr. Landry has settled his claim against the Constable's Office for $18,000. The Bankruptcy Code does not specify the appropriate result in this situation. Nor have courts addressed how one defendant settling a section 362(k) claim impacts a non-settling defendant's liability.

Perhaps the Court could apply state law settlement rules in this situation. However, the Court finds that providing remedies for violations of the automatic stay is a "uniquely federal interest" that is "so committed by the Constitution and law of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts—so-called 'federal common law.'" *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988).

A federal common law rule is uniquely appropriate in this situation as the automatic stay is a fundamental aspect of the

Bankruptcy Code, and the state law of settlement offsets vary widely. *See United States v. Honeywell Int'l Inc.*, 47 F.4th 805, 816 (D.C. Cir. 2022) (noting that state law is divided between *pro tanto* and proportionate share rules).

The Fifth Circuit has not weighed in on the appropriate rule. In the context of fraudulent conveyance actions, the Fifth Circuit has upheld a settlement agreement where the parties agreed that only $500 of a $10,000 settlement would be credited to a non-settling co-defendant. *See In re Tex. Gen. Petro. Corp.*, 52 F.3d 1330, 1340 (5th Cir. 1995). However, the circumstances here are distinguishable from *Texas General Petroleum*.

In the context of the False Claims Act, federal courts have applied the *pro tanto* approach, reducing any common damages owed by a non-settling defendant by the amount of the settlement. *Honeywell Int'l*, 47 F.4th at 819. In admiralty suits, the Supreme Court has adopted the proportionate share approach, which calculates the non-settling defendant's liability with reference to the allocation of proportionate responsibility. *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 204 (1994).

In this case, the Court need not adopt a particular approach as federal common law. While apportionment of responsibility can be a difficult exercise, it is not in this case. The Constable evicted Mr. Landry after having received notice of the bankruptcy. While the Receiver is not without fault, her proportionate fault pales in comparison to that of the Constable[101]. A fair assessment of the proportionate fault is 80% to the Constable and 20% to the Receiver.

Here, the total amount of damages and attorneys' fees assessed is $22,660. The $18,000 settlement between Mr. Landry and the Constable represents approximately 79.44% of the total damages and attorneys' fees awarded. The remaining $4,660 constitutes

---

[101] The Constable has since amended his internal procedures. The Court complements the Constable for taking such a pro-active remedy after learning of the deficits in the internal procedures. He obviously received and chose to follow wise counsel.

approximately 20.56% of the total damages and attorneys' fees awarded. The difference between applying the *pro tanto* approach and the proportionate share approach is $128. Such a de minimis difference does not warrant adopting either approach in this case. And given the circumstances in this case, the equities favor requiring the Receiver to pay the additional $128 to ensure that Mr. Landry receives all the damages that he is entitled to. Thus, the Court will assess $4,660 in damages against the Receiver.

The Court recognizes that differing circumstances might require a different approach. For example, if punitive damages were awarded, it might prove unsatisfactory to share that liability. A more reasonable approach might separate out punitive damages from the balance of the award. The Court does not adopt a bright-line test.

The Receiver, in accordance with the state court orders and the orders of this Court, recently sold the Property for $300,000. Pursuant to this Court's order, the net sale proceeds, $272,763.04, are currently being held in the registry of the Court.[102] Under Texas law, specifically TEX. CIV. PRAC. & REM. CODE § 64.053, "[t]he court that appointed a receiver shall order any judgment against the receiver to be paid from funds held by the receiver." Section 543 of the Bankruptcy Code explicitly authorizes the Court to provide for the payment of reasonable compensation due to a state court receiver who served in a prepetition receivership. 11 U.S.C. § 543(c)(2). Providing for appropriate reimbursement of the damages award in this case is a necessary and proper use of the Court's authority. The sale proceeds from the Property that are currently in the registry of the Court constitute funds held by the Receiver. If the Court merely assessed damages against the Receiver without specification as to reimbursement to the Receiver, the judgment could reduce the portion of the proceeds that Mr. Landry is entitled to under the state court orders.

---

[102] Case No. 25-35208, ECF No. 81.

The damages assessed against the Receiver will be paid out of the Receivership property that is held in the Court's registry.

Ms. Scroggins sought the appointment of the Receiver. *Landry v. Scroggins*, No. 14-23-00728-CV, 2025 WL 1561532, at *2 (Tex. App.—Houston June 3, 2025). The Court previously ordered that Ms. Scroggins had no personal liability in this case. That conclusion remains correct. The allocation of the residual proceeds between Mr. Landry and Ms. Scroggins will be adjusted to ensure that Mr. Landry does not bear the cost of his own damages award. Put simply, the damages will be paid from funds that would otherwise have been awarded to Ms. Scroggins. This ensures that "substance will not give way to form" and "that technical considerations will not prevent substantial justice from being done." *Pepper v. Litton*, 308 U.S. 295 305 (1939).

Of the $272,763.04 currently held in the registry of the Court, Mr. Landry will receive $88,803.52 and Ms. Scroggins will receive $183,959.52. These figures, as explained in the Table below, reflect the 50/50 split of the Property sale proceeds pursuant to the state court partition order, the attorneys' fees and costs the state court awarded Ms. Scroggins in its summary judgment order, and the damages and attorneys' fees assessed against the Receiver for her violation of the automatic stay in this adversary proceeding.

Under the now-approved settlement with the Constable, Mr. Landry will receive $18,000 from the Constable not later than April 6, 2026.[103] To account for the $15,600 award of attorneys' fees to Mr. Milledge, the Court will order the Clerk to pay $15,600 of the $88,803.52 Mr. Landry is set to receive from the proceeds from the sale of the Property to Mr. Milledge. Thus, Mr. Landry will receive $73,203.52 from the proceeds from the sale of the Property. Because the proceeds from the sale will satisfy the attorney's fee award, Mr. Landry may retain the full $18,000.

---

[103] Case No. 25-35208, ECF No. 137.

**Table 4: Allocation of the Funds Held in the Registry of the Court**

| Sale Proceeds | $272,763.04 | |
|---|---|---|
| | Mr. Landry | Ms. Scroggins |
| Initial 50/50 Split of Sale Proceeds[104] | $136,381.52 | $136,381.52 |
| Attorneys' Fees Ordered by 400th District Court[105] | ($51,000.00) | $51,000.00 |
| Costs Assessed by 14th Court of Appeals[106] | ($1,238.00) | $1,238.00 |
| Damages Assessed Against the Receiver | $4,660.00 | ($4,660.00) |
| Attorney's Fees Paid to Mr. Milledge | ($15,600.00) | |
| Totals: | $73,203.52 | $183,959.52 |

## CONCLUSION

For the reasons explained above, the Court awards Mr. Landry damages against the Receiver in the amount of $4,660.  The Court will issue a separate judgment that allocates the registry funds in a manner that is consistent with this Memorandum Opinion.

SIGNED 04/01/2026

_____
Marvin Isgur
United States Bankruptcy Judge

---

[104] Case No. 25-35208, ECF No. 77-2.

[105] ECF No. 15-1, at 2.  This includes $25,000 for Mr. Landry's unsuccessful appeal to the Fourteenth Court of Appeals.  *See Landry v. Scroggins*, No. 14-23-00728-CV, 2025 WL 1561532, at *1 (Tex. App.—Houston June 3, 2025).

[106] Case No. 25-35208, ECF No. 77-12.